JOHN BARTLEY vs. JOSEPH ALMEIDA, JUNIOR
(and three companion cases [1]).

· Bristol.    October 27, 1947. — December 3, 1947.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Negligence*, Motor vehicle, Contributory, Due care of child, Use of way.
  *Agency*, Scope of authority or employment.

Evidence, at the trial of an action by a boy seven years of age against
  the operator of a motor truck, that, while the plaintiff and his brother,
  one year older, were playing tag on a public way and the plaintiff had
  started from between parked vehicles at defendant's left to cross the
  way to his brother on the other side, the defendant drove slowly down
  the way between parked vehicles and, when twenty-one feet away, saw
  the plaintiff's brother warn him and the plaintiff; that in the exercise
  of proper care the defendant might have seen the plaintiff but did not
  see him; and that the plaintiff was struck by the truck's right front
  mudguard when it was turned somewhat to its left, warranted a finding
  of negligence on the part of the defendant; and did not require a find-
  ing of contributory negligence on the part of the plaintiff although he
  admitted that he "did not look at all."
A finding that the owner of a motor truck was responsible for negligence
  of his son in operating it was warranted by evidence that the owner
  had directed the son to take his mother in the truck to get the family
  groceries and that the negligence occurred while they were returning
  home.

FOUR ACTIONS OF TORT. Writs in the Third District
Court of Bristol dated October 8, 1942.

On removal to the Superior Court, the cases were tried
before *Goldberg*, J.

*G. W. Walsh*, for the defendants.

*M. A. Goldberg*, (*W. B. Perry, Jr.*, with him,) for the
plaintiffs.

SPALDING, J. These are four actions of tort arising out of
an accident in which John Bartley, a minor, was struck by a
truck owned by Joseph Almeida and operated by his son
Joseph Almeida, Junior. Actions to recover for personal

---

[1] The companion cases are John Bartley vs. Joseph Almeida, Martin J.
Bartley vs. Joseph Almeida, Junior, and Martin J. Bartley vs. Joseph Almeida.

injuries were brought on behalf of the minor plaintiff (here-
inafter called the plaintiff) against both the operator and
the owner of the truck, and actions for consequential damages
against the same defendants were brought by the plaintiff's
father.  The cases were tried together to a jury, and ver-
dicts were returned in favor of the plaintiff and his father.
The only exceptions brought here are those taken by each
defendant to the judge's denial of his motions for directed
verdicts.  The following issues are raised by these motions:
(1) whether the evidence would warrant a finding that the
operator of the truck was negligent, (2) whether the plain-
tiff was contributorily negligent as matter of law, and
(3) whether it could have been found that the operator of
the truck at the time of the accident was an employee of the
owner acting within the scope of his employment.

The accident could have been found to have occurred in
the following manner:  On a clear evening in June, 1942,
at about 7:45, while it was still daylight, the plaintiff, then
aged seven, and his brother, aged eight, had just come out
of a store on the east side of South First Street in New Bed-
ford, and had started a game of tag.  South First Street at
this point runs north and south, and "with a car parked on
either side, there would be just enough room for another car
to go by."  Automobiles were parked along the curb on
both sides of the street.  The plaintiff was "tagged" by his
brother who then ran across to the opposite side of the
street, and the plaintiff followed him.  When the brother
reached the sidewalk on the west side of the street "he saw
the defendant's truck coming so he put up his hands to warn
his brother and the truck."  The truck at that time was
twenty-one feet away and was proceeding south in the center
of the street at a speed of about ten to fifteen miles an hour.
The plaintiff, who had emerged from between two parked
automobiles, "ran into the center of the street, where the
accident occurred."  Just before the accident the truck
turned "easterly a bit . . . and stopped just within a foot
or two of the point of contact."

Evidence was introduced, without objection or limitation,
that the operator of the truck stated after the accident that

"he didn't see the . . . [plaintiff] until the car struck him"; that he saw the plaintiff's brother run out into the center of the street, where he hesitated and then gave warning to the plaintiff who was apparently about to follow; and that the plaintiff collided with the right front mudguard of the truck. The operator, however, both in his statements made out of court and in his testimony said that the plaintiff and his brother were crossing the street from his right, that is, from west to east.

Although the question is close, we cannot say that there was no evidence of negligence on the part of the operator of the truck. If the plaintiff was running from west to east, as the operator testified, it is difficult to see how there could be any basis for a finding of negligence. There is no evidence of excessive speed. In a street barely wide enough for three automobiles it can hardly be said to be negligence on the part of a driver in failing to stop in time to avoid striking with his right front mudguard one who had hastily emerged from behind an automobile parked on the right hand side of the street. If the accident occurred in this manner the case would be governed by *Rizzitteli* v. *Vestine*, 246 Mass. 391, *Lynch* v. *Krancer*, 302 Mass. 593, *Abrahams* v. *Rice*, 306 Mass. 24, and *Rose* v. *Silveira*, 318 Mass. 709, on which the defendants rely. But the jury were not obliged to find that the accident happened in that way. They could have found that the plaintiff entered the street from the east or left side and that the operator might, in the exercise of proper care, have seen him in time to avoid the accident. This fact, taken in conjunction with the admission of the operator that he did not see the plaintiff before he was struck and the evidence that a warning signal was given him by the plaintiff's brother, distinguishes the present cases, we think, from those cited above and brings them within the authority of such cases as *Boni* v. *Goldstein*, 276 Mass. 372, 375, *DeFuria* v. *Mooney*, 280 Mass. 447, 449, *Fayard* v. *Morrissey*, 281 Mass. 166, 168, *Carbonneau* v. *Cavanaugh*, 290 Mass. 139, 141, *Mroczek* v. *Craig*, 312 Mass. 236, 238, and *McGovern* v. *Thomas*, 317 Mass. 740, 744.

The defendants argue that inasmuch as the plaintiff ran onto the street from behind a parked automobile, and, as he testified, "did not look at all," he was guilty of contributory negligence as matter of law. It could have been found that the plaintiff was capable of exercising such care for his safety that it was not negligence on the part of his parents or custodian to permit him to cross a street unattended. *Ferris* v. *Turner*, 320 Mass. 555, 557, and cases cited. See now G. L. (Ter. Ed.) c. 231, § 85D, inserted by St. 1945, c. 352, § 1, abolishing imputed negligence in cases of injury to a child. The plaintiff would not be barred from recovery if he exercised the care of a child of his age under like conditions. *DeFuria* v. *Mooney*, 280 Mass. 447, 449. *Stacy* v. *Dorchester Awning Co. Inc.* 290 Mass. 356, 360. *Birch* v. *Strout*, 303 Mass. 28, 30. Whether the plaintiff exercised that care here was a question to be decided by the jury. *Mroczek* v. *Craig*, 312 Mass. 236, 238.

It remains to consider whether it could have been found that the defendant Joseph Almeida, the owner of the truck, was responsible for the conduct of the operator. Since there was no evidence that the truck was registered in the name of Joseph Almeida as owner, the plaintiff derives no aid from G. L. (Ter. Ed.) c. 231, § 85A. *Kelly* v. *Railway Express Agency, Inc.* 315 Mass. 301, 302. There was evidence that the operator was in the employ of the owner, his father, who was in the coal and ice business, and on the day of the accident had finished work at 4:30 P.M. Subsequently the father told the son "to take his mother to get the groceries" and gave him permission to use the truck for that purpose. The son was taking his mother "to do the family shopping," and the father testified "that he planned to eat some of the groceries which were being obtained." It was while they were returning home that the accident happened. This evidence was sufficient to warrant a finding that the son was driving his father's truck on the latter's business when the plaintiff was injured. *Bourne* v. *Whitman*, 209 Mass. 155, 172–173. *Smith* v. *Jordan*, 211 Mass. 269. *Campbell* v. *Arnold*, 219 Mass. 160.

*Exceptions overruled.*